**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:17CR264(AWT) |
| v. | |
| JASON CHEN | February 19, 2019 |

## THE UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The Government respectfully submits this memorandum in aid of sentencing for the sentencing hearing of the defendant Jason Chen, scheduled for February 26, 2019.

## FACTUAL BACKGROUND

This is a dark web drug distribution case. The case originated when Postal Inspectors noticed that a large number of packages were being sent to Chen at his residence in Connecticut from Pennsylvania, where his co-conspirator William Fusco resided. Most packages were sent using stamps that were anonymously obtained. Postal interdicted one such package after a police K-9 alerted positively on the package. A search warrant was obtained for the package, which was found to contain steroids. A second warrant was obtained to do a controlled delivery. Once inside Chen's home, agents discovered the following:

1. Two industrial pill tableting machines;
2. Tool and dye molds;
3. One electric powder mixer/hopper;
4. Approximately 65,122 Xanax tablets;
5. Approximately 792 grams of Alprazolam powder;
6. Almost 12,000 steroid capsules and more than 321/100ml liquid steroid vials; and
7. Approximately $8,900 in cash.

Chen made a post arrest statement in which he admitted to distributing steroids and Xanax that Fusco marketed on the Dark Network market Alphabay. The "Dark Network" refers to any portion of the Internet that can be accessed only with specific software, configurations or

1

authorization. The most commonly known Dark Network is The Onion Router, otherwise known as TOR. People who access the Dark Network use a series of sets that anonymize their internet traffic, thereby making it difficult for law enforcement to track them via an Internal Protocol address.

In this case, Fusco paid Chen to maintain two pill presses at Chen's residence and to ship drugs to Fusco's customers. Chen recalled that the presses arrived pre-assembled and were delivered by UPS Freight or FEDEX Freight approximately six months before his arrest. Fusco shipped the chemicals needed to produce steroids and/or Xanax to Chen's house. On a number of occasions, Fusco traveled to Chen's home to mix chemicals and press chemicals, including Alprazolam into Xanax pills. Additionally, Fusco sent Chen emails that indicated the product, quantity, and mailing address of the customers, as well as a link for Chen to click on to get pre-paid shipping labels that corresponded to the orders. According to what Fusco told Chen, Fusco bought the shipping labels on the dark web using Bitcoin. Chen advised that he walked into the post office and took all the boxes and packaging materials he needed as his job was to pack up the orders into the appropriate U.S. Mail shipping container. Chen would click on the link provided in Fusco's email and put the pre-paid shipping label onto the corresponding packages. Chen would then take the packages to various blue U.S. Postal Service collection boxes.

Chen estimated that he sent out around 30 packages per week on average. Chen used various collection boxes to elude detection. Fusco paid Chen between $10.00 and $20.00 for each package that he prepared and sent out. Fusco paid Chen in Bitcoin.

## **PROCEDURAL BACKGROUND**

On December 6, 2017, the defendant pled guilty to a two-count Information, charging him with (1) conspiracy to possess with intent to distribute and distribute controlled substances, in violation of 21 U.S.C. § 846 and (2) possession of a tableting machine or any equipment used to manufacture a controlled substance, in violation of 21 U.S.C. § 843(a)(7) and 18 U.S.C. §2.

The maximum sentence for Count One is ten years in prison, two years to lifetime supervised release, and a $500,000 fine. The maximum sentence for Count Two is four years in prison, one year of supervised release, and a $250,000 fine. A special assessment of $200 is mandatory, pursuant to 18 U.S.C. § 3013.

The parties and Probation agree that the counts of conviction are grouped together. For Count One, they further agree that the defendant's base offense level is at least 16 pursuant to U.S.S.G. §§ 1B1.3 and 2D1.1(c)(13) and note 8 to § 2D1.1 because the defendant conspired to possess at least 213,868 pills consisting of a mixture and substance containing alprazolam (a schedule IV substance, which converts to 13, 366.75 grams of marijuana) and 26,040 units of a mixture and substance containing anabolic steroids (a schedule III substance, which converts to 26,040 grams of marijuana), resulting in an aggregate amount of 39 kilograms of marijuana.

They further agree that the base offense level should be adjusted as follows: (1) two levels added pursuant to U.S.S.G. § 2D1.1(b)(7) because the defendant distributed controlled substances mass-marketed by means of an interactive computer service by Fusco; and (2) two more levels added pursuant to U.S.S.G. § 2D1.1(b)(12) because the defendant maintained premises for the purpose of manufacturing a controlled substance. The resulting base offense level under this calculation would be 20.

With respect to Count Two, the parties and Probation agree that, pursuant to U.S.S.G. § 2D1.12, the base offense level is 12 because the defendant intended to manufacture a controlled substance with the imported and prohibited pill press. Two levels are added pursuant to U.S.S.G. § 2D1.1(b)(7) because the defendant distributed controlled substances mass marketed by means of an interactive computer service by Fusco. The resulting base offense level is 14.

Pursuant to U.S.S.G. § 3D1.4, the highest base offense level is 20 for Count One, which is one unit.  Because the difference between the base offense levels are between five and eight levels apart, half a unit is assigned to Count Two.  Thus, there are one and a half units in the combined offense level, resulting in an additional point pursuant to U.S.S.G. § 3D1.4(b).[1]  Finally, three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total adjusted offense level of either 18.

The parties agree that the defendant falls within Criminal History Category I.  A total offense level 18, assuming a Criminal History Category I, would result in a range of 27 to 33 of imprisonment (sentencing table) and a fine range of $10,000 to $100,000, U.S.S.G. § 5E1.2(c)(3).  The defendant is also subject to a supervised release term of at least two years.  U.S.S.G. § 5D1.2.

## DISCUSSION

*A.     Sentencing Standards*

In accordance with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed must be reached through consideration of the advisory Guidelines and

---

[1] The plea agreement contains an arithmetic error in this calculation; specifically, that the difference between the base offense levels for Count One (20) and Count Two (14) was four levels as opposed to six.  Thus, the plea agreement adds two points to the combined offense level whereas only one was appropriate.  The above calculation is the correct one that should be adopted by the parties, Probation, and the Court.

4

all of the factors identified in 18 U.S.C. § 3553(a).  In so doing, the Court has a statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)).

The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. §3553 including, but not limited to "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ... (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."  Accordingly, in determining an appropriate sentence for the defendant, the Court must take into account *all* of the factors delineated in Section 3553.

### B.     *Application of These Sentencing Factors to the Instant Case*

Applying these factors, there is no question that the defendant's crime was serious.  Equally unquestionable are these facts: his culpability pales in comparison to that of Fusco and his participation in drug trafficking was limited in its scope.

The defendant certainly participated in a drug operation in which he pressed and redistributed Xanax and steroids across the country.  As noted above, the defendant is responsible

for more than 200,000 Xanax pills. According to the National Institute of Drug Abuse, "[m]ore than 30 percent of overdoses involving opioids also involve benzodiazepines, a type of prescription sedative commonly prescribed for anxiety or to help with insomnia. Benzodiazepines (sometimes called "benzos") work to calm or sedate a person, by raising the level of the inhibitory neurotransmitter GABA in the brain. Common benzodiazepines include diazepam (Valium), alprazolam (Xanax), and clonazepam (Klonopin), among others." *See* https://www.drugabuse.gov/drugs-abuse/opioids/benzodiazepines-opioids. Indeed, in 2017, there were approximately 9,000 overdose deaths nationally attributed to Benzos. *See* http://www.ct.gov/dmhas/lib/dmhas/adpc/(9)_benzodiazepines.pdf. That is nearly four times the amount of such deaths in 2002. *Id.* In 2017 in Connecticut, 313 people died because of lethal mixture of benzos and other opioids. *See* https://www.ct.gov/ocme/lib/ocme/AccidentalDrugIntoxication2012-2017.pdf.

The defendant packaged and distributed this counterfeit Xanax and steroids to customers. He also helped Fusco operate illegal pill presses and agreed to store the pill presses at his home. There can be no question that the defendant's crimes were serious. But there are also mitigating factors in this case that the Court should not ignore. The defendant has no criminal history and his role in Fusco's operation was limited in its scope. First, his drug trafficking only began in January 2017 – he was arrested a mere six month later. Second, he had no role in Fusco's on-line markets and had no contact with his suppliers; indeed, he did not even take orders directly from customers. Hence, his role was most aptly analogous to a lower-level street dealer, new to the drug organization.

6

## **CONCLUSION**

As detailed above, the offense in this case is serious and the Court's sentence must address that sentencing factor as well as the need to promote respect for the law and afford adequate general deterrence to criminal conduct. However, the defendant's limited role and lack of criminal history are mitigating factors. Thus, the United States respectfully requests that the Court take notice of the foregoing and impose an appropriate sentence.

Dated: February 19, 2019
      Bridgeport, CT

                              Respectfully submitted,

                              JOHN H. DURHAM
                              UNITED STATES ATTORNEY
                              By: **/s/**
                              VANESSA RICHARDS
                              ASSISTANT UNITED STATES ATTORNEY
                              Bar Number: PHV 05095
                              UNITED STATES ATTORNEY'S OFFICE
                              1000 LAFAYETTE BOULEVARD
                              BRIDGEPORT, CT 06604
                              (203) 696-3016
                              Vanessa.richards@usdoj.gov

-8-
## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2019, a copy of the above submission was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


**/s/**
VANESSA RICHARDS
ASSISTANT UNITED STATES ATTORNEY
PHV 05095
(203) 696-3000